IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

MARCO MALTBIA, JR.,            )
                               )
           Plaintiff,          )
                               )
     v.                        )    No.  08 C 6610
                               )
CITY OF CHICAGO,               )
                               )
           Defendant.          )

                   MEMORANDUM OPINION AND ORDER

     Marco Maltbia ("Maltbia") alleges that a towing company charged him an excessive fee for towing his vehicle from a January 17, 2008 accident on the Chicago Skyway and that the towing company bribed Chicago Police Department ("Department") officers who responded to the scene in exchange for that business.  Maltbia brings this putative class action against the City of Chicago ("City"), asserting (1) violations of his rights to equal protection and due process pursuant to 42 U.S.C. §1983 ("Section 1983") and (2) a state law claim of fraud.  For the reasons stated below, City's motion for summary judgment is granted, and this action is dismissed.

                     **Summary Judgment Standard**

     Every Rule 56 movant bears the burden of establishing[1] the

---

[1] At the summary judgment stage, of course, Maltbia need not "establish" or "show" or "prove" anything, but must merely demonstrate that a genuine issue of material fact exists. This opinion employs the quoted terms only because the cited cases use that terminology, but it imposes on Maltbia the lesser burden described earlier in this footnote.

absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.).[2]

Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a summary of the facts, viewed (as required) in the light most favorable to nonmovant Maltbia.

## Background

Maltbia and his wife were involved in a car accident on January 16, 2008 at the 87th Street Westbound exit from the Chicago Skyway (C. St. ¶9). Two Chicago Police officers,

---

[2] This District Court's LR 56.1, adopted to implement Rule 56, requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. This opinion cites to City's LR 56.1 statement as "C. St. ¶ --," to Maltbia's LR 56.1 statement as "M. St. ¶ --" and to Maltbia's response as "M. Resp. ¶ --." Where the opponent does not dispute a party's original statement, this opinion cites only that original statement.

Nicholas Corr ("Corr") and Jacquelin Spaargaren ("Spaargaren"), responded to the scene, followed some time later by a tow truck from Four Sons Auto Repair Repossessions and Towing ("Four Sons") (id. ¶¶10, 11).

Maltbia and his wife were sitting in the police car when the tow truck driver knocked on the window (id. ¶12). Maltbia asked Corr if he had ever worked with the tow truck driver, and Corr said that "he normally does not vouch for tow guys, but this guy I've worked with him many times, and, you know, you can trust him to tow your car" (id. ¶14). Maltbia permitted the operator to tow his car and was given an invoice totaling over $2,000, which he signed without complaint (id. ¶¶16, 17). Maltbia's insurance company eventually paid Four Sons a negotiated price of $1,650, and he himself paid $1,127.90 (id. ¶20). Maltbia has no knowledge of how the tow truck driver was alerted about the accident and did not see the driver pay money to either police officer (id. ¶¶13, 18).

Maltbia filed suit against City (but not the officers) on November 18, 2008. Maltbia had come to believe, after reading a newspaper article describing a similar scheme, that the police officers who responded to his accident had been bribed by the tow truck company (C. St. ¶25). Maltbia appears to be claiming $2,150 in towing damages[3] and $100,000 in emotional damages (C.

---

[3] City states that Maltbia is claiming $1,450 in towing damages (C. St. ¶21), but Maltbia counters that he "paid $2,150,

3

St. ¶¶21, 22; M. Resp. ¶21). In support of his emotional damages claim, he notes that in the wake of the accident he had to undergo two marriage counseling sessions and had difficulty in paying his bills (C. St. ¶¶23, 24; M. Resp. ¶21).

Discovery revealed two relevant citizen complaints filed with Department between January 1, 2003 and January 1, 2008 (C. St. ¶28). One led to a criminal indictment in this District Court against a Department officer for accepting bribes from tow truck companies, resulting in that officer's conviction (United States v. Ciancio, No. 08 CR 580), and the other alleged that a Department officer had given a tow truck company preferential treatment (C. St. ¶28; C. Ex. 5). Neither complaint mentioned Corr or Spaargaren, and the pair was not investigated by Department for tow-truck-related violations either before or after this action was filed (C. St. ¶31).

Based in part on complaints received from Department's Internal Affairs Division ("IAD"), the FBI began a joint investigation with the IRS and Department into tow truck bribery in 2003 (M. St. ¶¶1-3). That investigation is ongoing and has resulted in eight indictments, five of which involved current or former Department officers (M. Ex. 9). Independent of that joint investigation, Department has investigated two police officers

---

which included $1650 in towing charges and a $500 deductible" (M. Resp. ¶21), citing page 77 of his deposition. That page was not reproduced, however, in any of the submitted materials.

4

(M. St. ¶8a). Departmental rules unsurprisingly prohibit officers from receiving bribes or recommending any professional or commercial service (id. ¶9).

**Monell Claim**

Just two weeks ago the Supreme Court issued a unanimous opinion providing a definitive exposition of the standard for municipal liability originally announced in Monell v. Dep't of Social Servs., 436 U.S. 658 (1978)--see Los Angeles County v. Humphries, 79 U.S.L.W. 4009 (U.S. 2010). Humphries, id. at 4011 stated in part:

> In sum, in Monell the Court held that "a municipality cannot be held liable" solely for the acts of others, e.g., "solely because it employs a tortfeasor." 436 U.S., at 691, 98 S.Ct. 2018. But the municipality may be held liable "when execution of a government's policy or custom...inflicts the injury." Id., at 694, 98 S.Ct. 2018 (emphasis added).

"Policy or custom" in that context is a "shorthand term" for a range of potential liability-creating conduct, which may include a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" as well as a "usage" or "practice" (Humphries, id., quoting Monell, 436 U.S. at 690). Consistently with those teachings, a plaintiff may demonstrate a policy or custom through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the

5

constitutional injury was caused by a person with final policymaking authority" (Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007)).

Maltbia's municipal liability theory appears to fall somewhere between the first and third categories. What he alleges is that City (or, more precisely, Department's Superintendent)[4] made a conscious decision to stand by and allow the federal investigation to proceed, rather than conducting its own investigation into violations of state law and police rules. That decision, according to Maltbia, was made with deliberate indifference to the rights of Chicago motorists and led directly to Maltbia's constitutional injury.[5] Unfortunately for Maltbia, that theory fails for several reasons.

First and foremost, there is no essential "affirmative link" between City's action or inaction (however it is defined) and the alleged constitutional deprivation (Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985)). Neither Corr nor Spaargaren was named in

---

[4] In describing the claimed custom or policy establishing municipal liability, Maltbia clearly focuses on a decision by Superintendent, who he claims is a final policymaker (M. Mem. 5-6). That formulation ignores that Department and City are separate entities, and failure to link Department action to City can be fatal to a municipal liability claim (see Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001)).

[5] While Maltbia charges City with deliberate indifference, he is not bringing a failure-to-train action as such, which is the usual vehicle for such a claim (City of Canton v. Harris, 489 U.S. 378 (1989)).

any complaints received by the IAD. Thus City had no knowledge or awareness, either actual or imputed, that those particular officers posed a threat to motorists involved in car accidents (see Jones v. City of Chicago, 787 F.2d 200, 204 (7th Cir. 1986)).

Without such notice, City cannot have been expected to take Corr and Spaargaren off the streets to protect motorists such as Maltbia from asserted depredations by those officers. Maltbia argues that City should have investigated possible violations on its own, but there is no evidence that even suggests that an independent investigation would have prevented the harm of which Maltbia complains.

Essentially Maltbia urges a wildly speculative chain of events: that an independent investigation would have uncovered wrongdoing on the part of Corr and Spaargaren--despite the fact that the joint federal investigation did not implicate either of them--and that Department should have prevented those officers from harming Maltbia after receiving such hypothetical information. Under that purported logic, City could prevent any type of violation by any officer were it only to conduct a large enough investigation.

Indeed, what City did do, by forwarding complaints to the FBI and participating in the federal investigation, has undoubtedly protected Chicago motorists by taking officers who

7

have engaged in such corrupt activity off the streets. In fact the only officer named in a complaint received by Department has, as stated earlier, been criminally indicted and convicted (the other complaint involved a tow-truck driver).

It would be a solecism to characterize City's commendable action in this regard as "deliberately indifferent." Maltbia's self-proclaimed disagreement with City's policy response is not even a colorable ground for municipal liability (Frake v. City of Chicago, 210 F.3d 779, 782 (7th Cir. 2000)).

Simply put, a reasonable factfinder would have no basis to conclude that City was "actually responsible" for any constitutional violation involving Maltbia (Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). Instead Maltbia is really asking this Court to hold City vicariously liable for the acts of its employees under a respondeat superior theory--a result expressly prohibited by Monell, 436 U.S. at 691. Because there is no genuine issue of material fact, Maltbia's municipal liability claim is dismissed.

**State Law Fraud Claim**

Maltbia's state law claim is sketchy at best: Complaint ¶20 alleges that the officers' conduct constitutes "the Illinois tort of fraud, for which defendant City of Chicago is liable under the

doctrine of respondeat superior,"⁶ and Maltbia does not elaborate on that concept in his current filing. But he can scarcely be faulted for following City's lead in not focusing on that supplemental jurisdiction claim in its Rule 56 motion--instead he simply agrees that if this Court were to dismiss his federal-question claim, it should decline to exercise jurisdiction over the state law claim (M. Mem. 3 n.3).

This Court will not penalize either litigant for that approach. It will rather follow the conventional practice of relinquishing supplemental jurisdiction over state law claims when all federal-question claims have been dispatched at such an early stage of the litigation. That is the seminal teaching of <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966), and this Court sees no reason why it should not join in that practice here. Hence Maltbia's state law claim is dismissed <u>without</u> prejudice.

## Conclusion

There being no genuine issue of material fact as to Maltbia's Section 1983 claim, this Court grants City's motion for

---

⁶ Though <u>Monell</u> teaches that respondeat superior is not a ground for municipal liability under Section 1983, that concept <u>is</u> available to impute liability to a municipality for certain torts under Illinois law (see, e.g., <u>Gaffney v. City of Chicago</u>, 302 Ill.App.3d 41, 45-50, 706 N.E.2d 914, 919-24 (1st Dist. 1998)), subject to the immunities and defenses of the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 et seq.

9

summary judgment on that claim, and that claim is dismissed with prejudice.[7]  Maltbia's state law claim is dismissed without prejudice to its possible advancement in a state court of competent jurisdiction.  This action is therefore dismissed in its entirety.

_____
Milton I. Shadur
Senior United States District Judge

Date:   December 16, 2010

---

[7] Maltbia makes the eminently reasonable concession that he cannot maintain this case as a class action.